RALPH BRINKERHOFF v. BENJAMIN VANSCIVEN and COR-
NELIUS VANVALER.

It is one of the most familiar and well settled principles of a court of equity,
that the vendor of real estate, has a lien on the lands sold for the purchase
money.*

The lien exists not only as against the vendee, but also as against persons
holding under him with notice.

To constitute the lien as against a purchaser under the original vendee, there
must be notice of the indebtedness, and that the indebtedness arose upon
the purchase of the property.

It is not necessary that there should be notice that the indebtedness consti-
tutes a lien on the land.

The acceptance by the vendor of other than the personal security of the ven-
dee, or any other circumstance showing that the vendor does not look to
the land as his security, will be an implied waiver of his lien.

The taking of the note or bond of the vendee for the purchase money, will
not avoid the lien.

No express agreement is necessary to create the lien; it results as an incident
of the sale, unless it be expressly waived, or there be such special circum-
stances as show that the parties did not intend the lien should exist.

The giving of a mortgage by the purchaser, for a part of the purchase mo-
ney, to a third party, on the day of the purchase, will not affect the lien,
as between the vendor and vendee.

BILL for foreclosure, and to establish a lien upon real
estate for the purchase money. The bill charges, that the com-
plainant, being seized in fee simple of three certain lots of land
and premises situated in the townships of Lodi and New-Bar-
badoes, in the county of Bergen, in the bill particularly de-
scribed, on or about the first day of June, eighteen hundred and
thirty-eight, agreed with Benjamin Vansciven, one of the de-
fendants, to sell and convey the said lands and premises to him,
for the sum of one thousand and one hundred dollars; one half
of which was to be paid in cash, on the delivery of the deed,
and the other half on the first day of May, then next en-
suing.

* See *Vandoren v. Todd et al.*, ante, vol. ii. page 397.

That in pursuance of the said agreement, the complainant, by deed of indenture, made by himself and his wife, dated on the first day of June, eighteen hundred and thirty-eight, but executed and delivered on the fourth day of the said month of June, conveyed the said lands, in fee simple, to the said Vansciven, who accepted the said deed, and on the delivery thereof, paid to the complainant five hundred and fifty dollars, one half of the consideration money, and as evidence of his agreement to pay the remaining half of said consideration money, then made and delivered to the complainant his promissory note for five hundred and fifty dollars, dated on the said first day of June, and payable on the first day of May then next; that five hundred dollars of the principal of the said note, with interest thereon from the time it became due, still remains unpaid; and that although the deed executed by the complainant and his wife, may contain a receipt and release for the full amount of the consideration money for the said deed, the same was never paid in full, but that the complainant retained, and still retains a lien upon the said lands, for the said sum of five hundred dollars, and that he has never consented to waive or relinquish his said lien, nor accepted or received any other security whatever, for the payment of the said sum of five hundred dollars, the balance of the said purchase money.

, The bill further charges, that the said Benjamin Vansciven, in order to pay to the complainant the said sum of five hundred and fifty dollars, part of the said purchase money, borrowed that amount of Abraham Westervelt, and to secure the payment thereof, made and executed to the said Abraham Westervelt his bond for the said sum of five hundred and fifty dollars, payable in one year, with interest, and also a mortgage upon the said lands, which was duly acknowledged and recorded. That on the seventh of March, eighteen hundred and forty, the said Abraham Westervelt, at the request of the complainant, and for the consideration of five hundred and seventy-eight dollars, duly assigned the said bond and mortgage to the complainant, and that the whole of the principal of the said bond, with in-

[Brinkerhoff v. Vansciven et al.]

terest thereon from the first day of June, eighteen hundred and thirty-nine, still remains due and unpaid.

That on or about the sixth day of January, eighteen hundred and forty, the said Benjamin Vansciven and Rachel his wife, by deed bearing date on that day, and purporting to be for the consideration of nine hundred dollars, conveyed the said lands and premises to Cornelius Vanvalen, subject to the said mortgage, which was assumed to be paid by said Vanvalen. That at the time of the said last mentioned conveyance, both Vansciven and Vanvalen well knew that the sum of five hundred dollars, part of the original purchase money for the said conveyance by the complainant to Vansciven, with interest thereon from the first day of May, eighteen hundred and thirty-nine, remained due and unpaid ; and the bill insists that the said lands remain subject, in the hands of Vanvalen, not only to the said mortgage, but also to the lien of the complainant, for the said sum of five hundred dollars, the residue of the said purchase money remaining unpaid.

The bill further charges, that the said lands and premises were conveyed, as aforesaid, by Vansciven to Vanvalen, for the express purpose of defrauding the complainant, and so that the same might not be subject to any judgment or execution which the complainant might obtain at law for the residue of the said purchase money ; and they were so received by Vanvalen, who was to hold the same for the benefit of Vansciven, the pretended consideration of the said conveyance never having been paid.

The bill prays an account ; that the premises may be sold, and that out of the proceeds the complainant may be paid the amount due upon his said bond and mortgage, with interest, and also the said sum of five hundred dollars, the balance of consideration money so due to him, as aforesaid, with interest.

Separate answers were filed by the defendants. The incumbrance of the mortgage was undisputed. The grounds of defence insisted on against the lien for the purchase money, are stated in the opinion of the chancellor.

22

[Brinkerhoff v. Vansciven et al.]

*Zabriskie* and *I. H. Williamson*, for complainant.

*G. Cassedy* and *A. Whitehead*, for defendants.

Cases cited by complainant's counsel. 15 *Vesey*, 330; 1 *John. Chan.* 308; 2 *Rand.* 428; 1 *Mason*, 191; 4 *Kent*, 145; 1 *Paige*, 20; 3 *Paige*, 513; 2 *Edwards*, 505; 1 *Vernon*, 267; 2 *Eq. Cas. Ab.* 682; 1 *Sch. and Lef.* 132; 7 *Yerger*, 1; 3 *I. I. Marshal*, 558; 1 *Mitford's Pl.* 216; 1 *John. Chan.* 288, 302; 1 *Hopkins*, 48, 55.

Cases cited by defendants' counsel. 1 *Powell on Mort.* 565; *Ambler*, 724; 1 *Paige*, 494; 2 *Dess.* 509; 2 *Mad. Chan.* 105; 1 *Fonb. Eq.* 131, 2; 6 *Binney*, 118; 4 *Wheaton*, 256, 290; 2 *Green*, 212.

THE CHANCELLOR. The facts in this case, lie within a very narrow compass. The complainant, on the first of June, eighteen hundred and thirty-eight, sold to the defendant, Vansciven, a piece of land in Bergen county, for eleven hundred dollars. He received, at the time of the sale, a cash payment of five hundred and fifty dollars, being half of the consideration, and took a note of Vansciven for the remaining half, payable on the first of May next after its date. The only question involved in the cause is, whether the complainant has a lien in equity, under the circumstances of this case, upon the land, for the payment of his note.

Abraham Westervelt, at the time of the sale, loaned the five hundred and fifty dollars to Vansciven, (which he paid to complainant,) and took a bond and mortgage on the property as his security. I do not perceive that the complainant had any thing to do with the loan, or can in any way be involved in it; but he has since paid to Mr. Westervelt the amount due upon his bond and mortgage, and taken an assignment of them, before instituting this suit. This was done, no doubt, to remove out of the way any dispute about the Westervelt mortgage, and

possibly, as suggested on the argument, to protect himself from costs, if the suit was decided against him. Whatever may have been his object, he had a right to take that course, and to use the mortgage as he has done, so long as the defendant is not obstructed in the course of his defence.

The bill has two objects; to foreclose the mortgage, and to establish and enforce the lien, insisted upon, for the complainant's note. There being no dispute on the mortgage, the controversy is alone as to the lien, except it may be about the costs.

At the time of the sale, it does not appear that the complainant took any mortgage or other security for his note, or that there was any special agreement made that the note should or should not remain a lien on the land. There was nothing express on the subject, one way or the other, either affirming or waiving it. It was left to be governed by the operation of law in such cases.

On the sixth of January, eighteen hundred and forty, the defendant, Vansciven, having put improvements on the property, sold and conveyed it to the defendant, Cornelius Vanvalen, for the consideration, as stated in the deed, of nine hundred dollars. The mortgage to Westervelt made a part of the consideration, and was to be paid by Vanvalen. The improvements put on by Vansciven consisted of a small house and kitchen, of the value of four or five hundred dollars. It is charged in the bill, that when Vanvalen bought, he knew that five hundred dollars of the consideration money of this land, remained unpaid from Vansciven to the complainant, (this being the amount unpaid on the note.) Vansciven in his answer admits, as must necessarily have been the case, that he knew before and at the time of the giving of the deed to Vanvalen, that five hundred dollars was due complainant on his purchase of the property, but whether Vanvalen knew this or not, he says he cannot state. The answer of Vanvalen is certainly designed to carry the impression that he knew nothing of this debt, and particularly as constituting any part of the consideration for the land sold Vansciven. Some very just exceptions are however taken to the

answer, in meeting this important charge in the bill. The defendant does not frankly and openly say, that at the time of his purchase he knew nothing of the existence of this debt, but the language is, that he had no personal knowledge of it. If he means by this, that he never saw the note, or was not present at the time it was given, or at the making of the agreement between the complainant and Vansciven, then certainly it is no answer to the bill; for all this may be true, and yet the defendant have had all the knowledge by information, which the case requires. The other parts of the answer, do however, meet the charges more directly and fully, by declaring that the defendant knew Vansciven was indebted to complainant, but not on what account. The defendant further declares, that shortly after the conveyance of the lands to him, (as he believes,) he was for the first time informed of the existence of the said note, by Abraham Westervelt. The answer might, and should have been certain, on a matter so important and so recent as this, and particularly so, as it lay within the breast of the defendant. But waiving all further criticism, I take the answer, and shall so be governed by it, as denying any knowledge that complainant held a note or other demand, arising from the sale of the land to Vansciven; that he knew he owed him, but not that he owed him any part of the consideration money on this purchase.

* The equitable lien which the vendor has on the lands sold for the consideration money, is one of the most familiar and best settled principles of the court. It is founded on the justice and propriety of securing to the man that parts with his property, the first claim to be paid out of it, before any other person. As between vendor and vendee, and between vendor and a purchaser from the vendee with notice, the lien clearly obtains. The notice must go farther than that of a mere indebtedness by the vendee to the vendor, it must extend to a knowledge of an indebtedness on the purchase of the property. * These are the only facts that he should be notified of; he need not be informed whether such indebtedness constitutes a lien on the property or not; that is matter of law, of which no notice is required. So

too, if the vendor take any other than the personal security of the vendee for his money, as the note of a third person, a transfer of stock, or a mortgage for a part only of the consideration money, these or any other circumstances, going to show that he does not look to the land as his security, will be taken to be an implied waiver of the lien, and discharge the land from further liability. Although somewhat disputed, yet upon examining the cases, it is now settled, and upon good reason, I think, that the taking of a mere note or bond of the vendee, will not avoid the lien. If the party looks to the vendee alone for his money, without taking any other or further security, the land is liable.

\* There need not be any express agreement, at the time of the sale, to create the liability ; it results as an incident to the transaction, unless it be expressly waived, or there be such special circumstances as to show that the parties did not intend the lien should remain. The lien exists, unless there is a manifest intention it should not exist. \* Lord Eldon has reviewed with great pains all the English cases, in the case cited of *Mackreth* v. *Symmons*, 15 *Vesey*, 328. That cautious and learned chancellor has gone over the whole subject, and settled the doctrine in conformity with the general current of authority, on a firm basis, and which is not likely to be again shaken. He designed, no doubt, to put the subject at rest. As applicable to the case under consideration, the language of the chancellor, at the close of his opinion, is very conclusive. He says, " from all these authorities, the inference is, first, that generally speaking, there is such a lien; secondly, that in those general cases in which there would be the lien, as between vendor and vendee, the vendor will have the lien against a third person who had notice that the money was not paid. These two points seem to be clearly settled."

In *Fish* v. *Howland*, 1 *Paige*, 20, the present chancellor of the state of New-York has, with great care, reviewed the cases not only in the English chancery, but in the courts of equity in this country. The general principle of this lien is

22\*

[Brinkerhoff v. Vansciven et al.]

fully recognized in this country, and will be found to obtain in most of the states, if not in all, where they have a court of equity. It not being a legal incumbrance, can of course have no existence in those states who have no equity courts to enforce it. The doctrine has long been recognized in the state of New-York; it has been also recognized in the courts of Kentucky and Tennessee, and in the court of appeals in Virginia. It is expressly decided, however, in the supreme court of the United States, in *Bayley* v. *Greenleaf*, 7 *Wheaton*, 46, that this lien cannot interfere with creditors holding under a bona fide mortgage from the vendee, or a subsequent purchaser without notice. Chancellor Kent, in the fourth volume of his *Commentaries*, 151, treats the subject as a well settled principle of equity jurisprudence, both in England and in this country.

But it is earnestly contended, that whatever may be the rule in England or in other states, as to this implied lien, it has never been recognized in this state, and should not be. I do not know of any case in New-Jersey, where the question has come up, or I have no doubt the doctrine would have been affirmed. I have myself recognized it in an ex parte case, although it is true, that case went much farther, and might well be settled as it was, on other grounds. Why should not this principle be applied to us? There is nothing peculiar in our institutions affecting a question of this character, and certainly not in distinction from other states of the union. It is a doctrine founded on the experience of years, enforced by some of the wisest and best men that have adorned the bench in that country from which we are descended, and from whose system of jurisprudence ours is derived. This has been followed, too, in the state of New-York, a people with whom we are closely allied, and with whose laws we are, in many respects, identified. I can find nothing on which I am willing to rest, in this course of argument. The great principles of equity apply in this, with as much force as in any other state, and its courts are bound to respect, and should be governed by the lights of experience which may be furnished from other sources. Nor will it vary

the case, whether the decisions are made prior or subsequent to our Revolution. I do not mean to declare the decisions of the English courts, or those in other states, as binding upon us, but they are to be used as guides on all the great questions arising under our system of jurisprudence, and we should be blind to our interests not to profit by their experience and wisdom.

It was further, in this case, insisted, that the giving of a mortgage by the purchaser, (Mr. Vansciven,) to Mr. Westervelt, for five hundred and fifty dollars of the purchase money, on the day that the deed was delivered, places the complainant in the same situation as if he had himself taken a mortgage for a part of the consideration money for the land. This cannot be so. He received his payment in cash, and it surely cannot vary the case, whether Vansciven had the money on hand or borrowed it of another. Receiving as the complainant did, the money for which this mortgage was given, a question might have arisen between him and Mr. Westervelt, whether his lien was prior or subsequent to the mortgage. But that question is put out of the way, and the lien is only claimed, subject to the mortgage.

It remains to be seen from the evidence, whether Vanvalen, the purchaser from the original vendee, had notice of the existence and of the non-payment of the lien. His answer, as we have observed, virtually denies any knowledge, except that Vansciven owed the complainant. On what account he owed him, he professes not to have known.

It would, at first blush, seem rather surprising, that persons situated as these defendants were, should not freely have communicated with each other on all subjects of this character, but it may be that they did not. It is my duty to be guided by the evidence, and I must declare my conviction that proof of notice is made out, and in a satisfactory manner. Abraham Westervelt, whose testimony is unimpeached, and a gentleman admittedly of intelligence and undoubted integrity, testifies, that before the conveyance from Vansciven to Vanvalen, the latter called on him, and asked about his mortgage, and whether it

could lay or not; he also asked whether there was any other incumbrance on the property, and said he would buy the property if he could. The witness says, he told him he did not know whether there was any other incumbrance on the property or not, but that Mr. Brinckerhoff (the complainant) held Vansciven's note for a part of the purchase money for the place. Vanvalen then asked the witness if that was an incumbrance on the place. The witness told him that he did not know that it was any incumbrance, but he did not think it more than right that Mr. Brinkerhoff should be paid his note. Here, it will be observed, is not only direct and positive notice of the incumbrance, but a suggestion made by Mr. Vanvalen himself, whether the note did not bind the land. Elisha Utter also testifies, that he worked at the house built on the premises, by Vansciven, in company with him and Vanvalen, who was the carpenter that built it, and at noon-spells heard them talk about the note that complainant held for a part of his purchase money, and the amount due on the note was stated. This was while Vansciven owned the place. Here, then, are two witnesses unimpeached, and they overcome the answer, even if admitted to be explicit in its terms.

*I decide this cause upon the ground that the complainant has an implied equitable lien on the property sold to Vansciven, for the payment of his note, which he is entitled to have the aid of this court to enforce against the property in the hands of Vanvalen, he being a purchaser with notice. *

Taking this view of the case, it is unnecessary that I should examine the alleged fraud in the sale, made by Vansciven to Vanvalen. It is charged to have been only a contrivance to defraud the complainant out of the note. I pass it by, as not necessary to be settled here, but I am very far from being satisfied with the bona fides of the transaction. The result of this case would be the same, let the sale made by the one defendant to the other have been designed in fraud or otherwise, the only effect of believing it a fraud, is to relieve the mind from all anxiety for any supposed hardships in the case, towards Mr. Vanvalen.

[Brinkerhoff v. Vanseiven et al.]

The complainant will be entitled, after a master shall have reported the amount due on his bond and mortgage and note, to a decree for a sale of the property, to pay that amount, with costs, out of the property.

Reference to a master.